UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

STEPHEN L. GRANT,

      Plaintiff,

      v.                                              Case No. 12-C-668

WAYNE LAUFENBERG, JOSEPH VERDEGAN,
SHELLEY ZAGER, and WILLIAM SWIEKATOWSKI,

      Defendants.

---

DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE ADDITIONAL SUPPLEMENT (DOC 58), GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO WILLIAM SWIEKATOWSKI AND DENYING AS TO THE REMAINING DEFENDANTS (DOC 36), AND DISMISSING WITHOUT PREJUDICE PLAINTIFF'S CLAIMS AGAINST WILLIAM SWIEKATOWSKI

This case comes before the court on defendants' motion for summary judgment on plaintiff's class of one and equal protection claims as well as plaintiff's motion for leave to supplement information supporting his contention that he exhausted his administrative remedies. Because the defendants have responded to the pro se plaintiff's supplemental information and they will not be prejudiced if it is considered, the plaintiff's motion will be granted. Also, for the reasons set forth below, defendants' summary judgment motion is granted in part and denied in part.

SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A.,*

*Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## BACKGROUND

At all relevant times, plaintiff was an inmate housed in the North Cell Hall (NCH) at Green Bay Correctional Institution (GBCI). The NCH has ten inmate employees, including first shift tier workers, second shift tier workers, and a runner. An inmate worker is released from his cell to work as needed. If there are no duties to perform, GBCI still pays the inmate, however he remains in his cell.

Plaintiff began working as a tier-janitor in June 2007 and, eventually became a second shift tier-A employee. In November 2008, the NCH runner was transferred to another institution, and the most senior inmate working on first shift was assigned as the

2

new runner. Plaintiff asked to be considered for the NCH runner position, and on November 4, 2008, wrote a letter to Lt. Stevens asking why the second shift tier workers were not eligible for promotion to the job. Plaintiff was approved to serve as a runner and began working on November 9, 2008. As a result, he was paid as the NCH runner from November 9, 2008, until March 24, 2009.

Plaintiff avers that defendants Verdegan and Laufenberg kept plaintiff in his cell and let others work in his place from November 26, 2008, through March 4, 2009. He also avers that Verdegan and Laufenberg filed a false conduct report against him on December 1, 2008, and that they arbitrarily placed him in temporary lock up (TLU) from December 12, 2008, through December 15, 2008. Plaintiff made claims of staff misconduct, and defendant Swiekatowski was directed to investigate.

According to plaintiff, Swiekatowski did not investigate his claims thoroughly and failed to let him view a video tape that was relied on to support a finding of guilt on the false conduct report. Plaintiff also maintains that defendant Zager did not allow him out of his cell for work on March 4, 2009, and that Zager filed a false conduct report against him after observing him complaining to a security supervisor about the acts and conduct of Zager and Laufenberg. .

## DISCUSSION

With regard to exhaustion, defendants concede that plaintiff fully exhausted his claims against defendant Zager and his claim against defendant Laufenberg for retaliation on or after March 4, 2009. However, they argue that plaintiff did not fully exhaust his remaining claims because the offender complaints he submitted did not put

3

them on notice of plaintiff's constitutional claims against defendants Laufenberg, Verdegan, and Swiekatowski.

Under the Prison Litigation Reform Act (PLRA), "[n]o action shall be brought with respect to prison conditions under Section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(e). The PLRA exhaustion requirement dictates "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines. *Woodford v. Ngo*, 548 U.S. 81, 87, 92 (2006); *see also, Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require"). It is defendant's burden to establish that plaintiff has failed to exhaust administrative remedies. *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002).

The Inmate Complaint Review System (ICRS) is the administrative remedy available to inmates within the Wisconsin prison system for complaints about prison conditions or the actions of prison officials. Wis. Admin. Code § DOC 310.01(2)(a). The Wisconsin Administrative Code specifically provides that before an inmate may commence a civil action, the inmate shall exhaust all administrative remedies that the Department of Corrections has promulgated by rule. Wis. Admin. Code § DOC 310.05. The ICRS is available for inmates to "raise significant issues regarding rules, living conditions, staff actions affecting institution environment, and civil rights complaints." Wis. Admin. Code § DOC 310.08(1). However, an inmate may not use the ICRS to raise "[a]ny issue related to a conduct report, unless the inmate has exhausted the disciplinary

4

process in accordance with ch. DOC 303." Wis. Admin. Code § DOC 310.08(2)(a). Complaints filed under the ICRS must "[c]ontain only one issue per complaint, and shall clearly identify the issue." Wis. Admin. Code § DOC 310.09(1)(e).

Defendants do not dispute that plaintiff properly exhausted the inmate complaints he filed. Instead, they argue that plaintiff's offender complaints regarding procedural issues did not put them on notice as to plaintiff's constitutional claims. Hence, this case will turn on the content of plaintiff's relevant offender complaints and whether they put at issue the retaliation and class of one equal protection claims raised in this case.

On December, 2008, plaintiff received Conduct Report No. 2050656. He was found guilty following a disciplinary hearing and received seven days loss of recreation. Plaintiff appealed, but the warden affirmed the decision and sentence.

Plaintiff submitted a staff misconduct complaint against Verdegan and Laufenberg for "denying [plaintiff] an equal and fair opportunity to perform all my responsibilities as the NCH runner," "arbitrarily placing [plaintiff] in TLU status," and "subjecting [plaintiff] to ongoing retaliation." (Affidavit of Welcome Rose, Exhibit 108, p. 21, ECF 39). This was submitted on an offender complaint form, but it was not assigned a complaint number. Instead, the ICE returned the form to plaintiff with instructions to resolve the matter informally. The offender complaint was forwarded to Security Supervisor Laurent, who spoke with plaintiff about the claims and told plaintiff that the materials were turned over to Swiekatowski for investigation.

Plaintiff filed Offender Complaint No. GBCI-2009-457 on January 5, 2009. It addresses five procedural errors regarding the disciplinary process for Conduct Report No. 2050656. As for the first asserted error, the offender complaint mentions plaintiff's

5

request to the warden to hold the disciplinary hearing in abeyance "pending an investigation of several false statements in the CR." (Affidavit of Welcome Rose, Exhibit 106, p. 11, ECF 39). The third asserted error contends that the hearing officer exercised discretion to not review a copy of the December 2, 2008, letter plaintiff sent to the Security Director. Plaintiff says he presented the letter to the hearing officer "so that he would have a better understanding of what I believed contributed to the false disciplinary charge. The letter which is factually true, was written because the report writer from the outset was against me being assigned to the then vacant NCH runner's position." *Id.* at p. 13.

On January 27, 2009, plaintiff filed Offender Complaint No. GBCI-2009-2392 regarding his placement in TLU status. The title of the document states that plaintiff was placed in TLU status in violation of the procedural requirements. On the other hand the body of the document says:

> They did not provide me with any form of explanation (oral or written). No security supervisor approved the TLU placement and I did not receive written notice per the procedural requirements under DOC 303.11.

(Affidavit of Welcome Rose, Exhibit 107, p. 7, ECF 39).

Plaintiff submitted Offender Complaint No. GBCI-2009-2393 with regard to his claim that he was not allowed to do his job as NCH runner. It says "Sgt Laufenberg and CO Verdegan are unfairly denying me an opportunity to perform all my responsibilities as the NCH Runner as the current position description requires." (Affidavit of Welcome Rose, Exhibit 108, p. 10, ECF 39). Moreover, it maintains that: "Sgt. Laufenberg and CO Verdegan falsely stated that the Runner's position description had changed. Such

6

statement was simply a pretext to disguise their unfair treatment towards me." Offender Complaint GBCI-2009-2393 concludes: "Again, Sgt. Laufenberg and CO Verdegan are unfairly denying me an opportunity to perform all the responsibilities of the NCH Runner as the current position description requires." *Id.*

Despite defendants' arguments to the contrary, the language of these complaints against Laufenberg and Verdegan, especially in the context of plaintiff's other communications with staff, put defendants on notice of plaintiff's claims that their actions were unfair to plaintiff and/or taken because defendants were unhappy with plaintiff's actions. Not only did these offender complaints place these defendants on notice that plaintiff had a problem with the underlying events (not being allow to perform his runner duties, false conduct report, and placement in TLU), these offender complaints were sufficient to alert defendants Laufenberg and Verdegan that plaintiff may assert constitutional claims against them.

Although defendants concede that magic words (like retaliation or equal protection) are unnecessary, their summary judgment motion fails to properly acknowledge that plaintiff submitted an offender complaint form with the magic words such as denying plaintiff an equal and fair opportunity to perform his job. Plaintiff called this document a staff misconduct complaint pursuant to DAI Policy #310.00.01. It was not filed as an offender complaint and was returned unfiled to plaintiff to attempt to resolve the issues informally. Plaintiff addresses this issue in his request for corrections complaint examiner review in Offender Complaint No. GBCI-2009-2393. He explains that he submitted his complaint alleging staff misconduct on December 21, 2008, but was told that he needed to attempt to resolve his issue first and then provide the ICE department with written

7

documentation of his attempt to resolve the issues. Plaintiff argues that this is not a requirement for complaints alleging staff misconduct per DAI Policy #310.00.01. Additionally, he points out that DAI Policy #310.00.01 "does not prohibit or preclude an inmate from raising in a single complaint several allegations of staff misconduct against any accused staff member(s) who conspired or acted jointly." (Affidavit of Welcome Rose, Exhibit 108, p. 17, ECF 39).

In this request for corrections complaint examiner review, plaintiff notes that Swiekatowski failed to follow the proper procedures for investigating allegations of staff misconduct. However, plaintiff mentions that point as a reason why that complaint (No. GBCI-2009-2393) should not have been rejected as untimely.

Plaintiff did not file any offender complaint about Swiekatowski's investigation of plaintiff's allegations of staff misconduct. Nor did he file an offender complaint regarding Swiekatowski's refusal to let him view a video tape that was relied on to support a finding of guilt on the conduct report 2050656. Consequently, he failed to exhaust his administrative remedies with regard to the claims he raises against Swiekatowski in this case. Therefore,

IT IS ORDERED that plaintiff's motion for leave to file additional supplement is granted. (Doc. 58)

IT IS FURTHER ORDERED that defendants' motion for summary judgment is granted with respect to plaintiff's claims against William Swiekatowski and denied with respect to the claims against the other defendants. (Doc. 36)

IT IS FURTHER ORDERED that plaintiff's claims against defendant Swiekatowski are dismissed without prejudice, and Swiekatowski is dismissed as a defendant in this action.

Dated at Milwaukee, Wisconsin, this 27th day of March, 2014.

BY THE COURT

/s/ C.N. Clevert, Jr.
C.N. CLEVERT, JR.
U.S. District Judge